No. 02-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 31

LESLIE SAARI, Individually, as Personal Representative
of the ESTATE OF JEAN LEONE SAARI, Deceased;
JASON SAARI; SHAYNE SAARI; BRIAN SAARI
and SCOTT SAARI; and LISA SAARI, BRENDA SAARI
and JUSTIN SAARI, Minors by and through their
Guardians ad Litem, SHARON KINMAN, GRACE HALL,
and SHELLEY McELROY, Respectively,

　　　　　Plaintiffs and Appellants,

　　v.

WINTER SPORTS, INC., a Montana Corporation,
d/b/a The Big Mountain,

　　　　　Defendant and Respondent.

APPEAL FROM:　　District Court of the Eleventh Judicial District,
　　　　　　　　In and for the County of Flathead, Cause No. DV-00-581A
　　　　　　　　The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

　　　　　For Appellants:

　　　　　　　　Todd A. Crabtree; Crabtree Law Firm, Stillwater, Minnesota

　　　　　　　　Evan F. Danno; Lerner & Danno, Kalispell, Montana

　　　　　For Respondent:

　　　　　　　　Mikel L. Moore; Christensen, Moore, Cockrell, Cummings &
　　　　　　　　Axelberg, Kalispell, Montana

　　　　　　　　　　　　　　　Submitted on Briefs:　October 10, 2002

　　　　　　　　　　　　　　　　　　Decided:　February 25, 2003

Filed:

　　　　　　　_____
　　　　　　　　　　　　　　Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     The Plaintiffs in the underlying action (collectively, the Saaris) appeal from the judgment entered by the Eleventh Judicial District Court, Flathead County, on its order granting the motion for summary judgment filed by Winter Sports, Inc. (WSI).  We affirm.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err in granting summary judgment to WSI on all counts of the Saaris' complaint based on its determination that § 70-16-302, MCA, provides WSI with immunity from suit?

¶4     2.  Did the District Court err in granting summary judgment to WSI on the Saaris' attractive nuisance claim?

## BACKGROUND

¶5     On December 4, 1998, Jean Saari (Jean) went inner tube sledding with a church youth group at The Big Mountain, a ski resort owned by WSI.  The youth group arrived at The Big Mountain when the ski resort had closed its operations for the day.  Notwithstanding, the group selected a ski slope and began sledding.  It did not pay any fees to WSI to use the sledding hill and did not rent or purchase equipment from WSI.  At some point during the evening, the inner tube on which Jean was riding went out of control and crashed into a creek bed.  As a result of the accident, Jean suffered injuries from which she eventually died.

¶6     The Saaris subsequently filed a complaint in the District Court against WSI alleging six negligence counts denominated as follows: survival action, wrongful death, negligence, premises liability, attractive nuisance and infliction of emotional distress.  WSI answered the

2

complaint. It then moved for summary judgment on all counts, arguing that, pursuant to § 70-16-302, MCA, it owed no duty of care to Jean and, consequently, the Saaris' claims were precluded. As to the attractive nuisance count, WSI also moved for summary judgment on the basis that the Saaris could not establish the requisite elements of the claim. After briefing by the parties, the District Court entered its order granting summary judgment to WSI on the grounds that all counts of the Saaris' complaint were precluded by § 70-16-302, MCA, and that the attractive nuisance count also failed as a matter of law. Judgment was entered accordingly and the Saaris appeal.

STANDARD OF REVIEW

¶7     We review a district court's grant of summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by that court. Contreras v. Fitzgerald, 2002 MT 208, ¶ 10, 311 Mont. 257, ¶ 10, 54 P.3d 983, ¶ 10. In that regard, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P. The party moving for summary judgment bears the burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Once the movant does so, the burden shifts to the nonmoving party to present evidence establishing the existence of material issues of fact which preclude summary judgment. Contreras, ¶ 10. "[T]he opposing party must present material and substantial evidence, rather than mere conclusory

3

or speculative statements, to raise a genuine issue of material fact." Gonzales v. Walchuk, 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9.

## DISCUSSION

¶8    1.  Did the District Court err in granting summary judgment to WSI on all counts of the Saaris' complaint based on its determination that § 70-16-302, MCA, provides WSI with immunity from suit?

¶9    Section 70-16-302(1), MCA provides that

> [a] person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property.  The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

The general purpose of § 70-16-302(1), MCA, is to encourage landowners to make their property freely available for public use by granting the landowner relief from liability to people gratuitously entering the property for recreational purposes.  Simchuk v. Angel Island Community Ass'n (1992), 253 Mont. 221, 226, 833 P.2d 158, 161 (citations omitted).  By its terms, however, § 70-16-302(1), MCA, provides for liability when the recreational user gives valuable consideration to the landowner in exchange for using the property or when the landowner acts in a manner constituting willful or wanton misconduct.

¶10    In its motion for summary judgment, WSI argued that Jean was using its property for recreational purposes for which she did not give consideration and, as a result, § 70-16-302, MCA, shielded it from liability for her injuries and death.  The District Court agreed and granted the motion.  The Saaris contend the District Court erred in doing so because genuine

4

issues of material fact exist regarding the "consideration" and "willful and wanton misconduct" criteria in § 70-16-302(1), MCA, either of which--if resolved in their favor--would result in WSI losing its immunity from liability.

¶11 The Saaris first argue that there are genuine issues of material fact regarding whether WSI received valuable consideration in exchange for use of the property by Jean and the youth group. As stated above, § 70-16-302(1), MCA, relieves a landowner from liability for injuries to persons using the landowner's property for recreational purposes where the landowner does not receive valuable consideration for that use. It is not necessary that the user furnish the consideration, but the consideration must be given by someone to create access to the property for the user. Simchuk, 253 Mont. at 227, 833 P.2d at 162.

¶12 In support of its motion for summary judgment, WSI submitted the affidavit of its chief executive officer which stated that the youth group neither paid WSI any fees to use the property for sledding nor rented or purchased any equipment from WSI on the night Jean was injured. This affidavit establishes the absence of genuine issues of material fact regarding whether WSI received valuable consideration for Jean's use of its property. WSI having met its initial burden on summary judgment, the Saaris were required to come forward with substantial evidence raising a genuine issue of material fact. See Contreras, ¶ 10.

¶13 The Saaris concede that Jean and the youth group did not pay any fees to use WSI's property on the evening of the accident. They argue, however, that WSI still received valuable consideration in exchange for Jean's use of the property because WSI benefits financially from after-hours sledders. Specifically, the Saaris contend that

5

[i]t is very likely that people allowed to tube at Big Mountain when it is closed to the public will come back during operating hours. It is also likely that the people tubing after hours would purchase food and equipment from vending machines, restaurants and shops at the ski hill base. WSI directly profits from people spending money at the businesses operated by its lessees.

There are two problems with the Saaris' argument.

¶14     First, while it is true that it is not necessary for the ultimate user--in this case, Jean--to be the one who furnishes the valuable consideration to the property owner for the use of the property, it is necessary that the consideration be given "to create access to the premises <u>for</u> the ultimate user." <u>Simchuk</u>, 253 Mont. at 227, 833 P.2d at 162 (emphasis added). The Saaris present no evidence--indeed, they do not even contend--that anyone gave valuable consideration specifically so that Jean could access WSI's property on the evening at issue. Moreover, the Saaris advance no legal authority in support of the proposition that the economic benefit received by WSI when it receives valuable consideration from another person for that person's own recreational use of WSI's property at a different point in time constitutes valuable consideration given on Jean's behalf for her use of the property on the night in question. Rule 23 (a)(4), M.R.App.P., requires that a party's arguments be supported with citation to legal authority, and we will not address arguments for which legal authority is not advanced. State ex rel. Mazurek v. District Court, 2000 MT 266, ¶ 31, 302 Mont. 39, ¶ 31, 22 P.3d 166, ¶ 31.

¶15     Second, the Saaris' remaining assertions regarding WSI's indirect economic benefit from after-hour inner tube sledders are purely speculative. The Saaris offer no factual basis in the form of affidavits or otherwise for these assertions. As stated above, the party

opposing summary judgment "must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact." Gonzales, ¶ 9. The Saaris' statements that certain matters are "likely" do not constitute material and substantial evidence; indeed, they do not constitute evidence at all.

¶16     The Saaris point out, however, that they requested business and financial documents from WSI during discovery which would have supported their contentions here, but WSI refused to produce the documents. They argue that WSI's refusal to provide the requested information, when viewed in the light most favorable to them, establishes the existence of a genuine issue of material fact regarding whether WSI received valuable consideration.

¶17     On receiving the Saaris' discovery requests, WSI moved for--and the District Court granted--a protective order. The proper method by which to challenge WSI's refusal to provide the documents was to appeal the District Court's protective order. The Saaris have not done so. Moreover, their assertion that WSI's refusal to provide the documents somehow indicates that it did receive valuable consideration for the use of its property is entirely speculative. An absence of evidence simply cannot--under law or common sense--establish the existence of a genuine issue of material fact. We conclude that the Saaris have failed to establish the existence of genuine issues of material fact regarding whether WSI received valuable consideration for Jean's use of its property on the evening of her accident.

¶18     The Saaris also argue that genuine issues of material fact exist regarding whether WSI committed willful or wanton misconduct which would make it liable for Jean's injuries under § 70-16-302(1), MCA. They contend that WSI's failure to prevent the youth group from

7

sledding after hours or to supervise the group's activities constitutes willful or wanton misconduct in light of WSI's knowledge of the dangers involved and reflects WSI's gross indifference to human life and safety. Again, however, the Saaris fail to support these conclusory and speculative statements with any substantial evidence. In the absence of such evidence, we conclude that the Saaris have failed to establish the existence of genuine issues of material fact regarding whether WSI acted in a manner constituting willful or wanton misconduct.

¶19 The Saaris next contend, relying on Simchuk, that the District Court erred in granting summary judgment to WSI because genuine issues of material fact exist regarding whether WSI's property was open to the public. In Simchuk, the plaintiff was injured while playing basketball on property owned by a homeowners' association. The property was available for use only by dues-paying members of the association and their invited guests, and the plaintiff was a guest of a dues-paying member at the time of his injury. Simchuk, 253 Mont. at 224, 833 P.2d at 160. The plaintiff brought a negligence action against the association, and a subsequent jury trial resulted in a verdict for the plaintiff. Simchuk, 253 Mont. at 224, 833 P.2d at 160. The association moved for judgment notwithstanding the verdict, arguing that § 70-16-302, MCA, precluded any recovery by the plaintiff. The district court granted the motion and the plaintiff appealed. Simchuk, 253 Mont. at 225, 833 P.2d at 160.

¶20 In addressing whether § 70-16-302, MCA, shielded the association from liability, we interpreted the statute by reviewing its legislative history, case law from other jurisdictions and the definition of "recreational purposes" set forth in § 70-16-301, MCA. We concluded

8

that "it is evident that [§ 70-16-302, MCA,] applies to land made available for public use. Therefore, if the land upon which an injury occurs is not available for public use, the landowner does not enjoy the protection of limited liability." Simchuk, 253 Mont. at 226, 833 P.2d at 161. We went on to determine that, where an injury occurred on property owned by a private homeowners' association which was available for use only by dues-paying members and their guests--but not the general public--the property was not available for public use. Consequently, we determined § 70-16-302, MCA, did not apply to shield the association from liability. Simchuk, 253 Mont. at 226, 833 P.2d at 161.

¶21    The Saaris contend that WSI's property was not open to the public for use as contemplated by Simchuk, because the ski resort is open only for limited hours and limited purposes, and only if the user purchases ski lift tickets. While the Saaris are correct, we conclude that the Simchuk requirement that the property at issue be "available for public use" was manifestly incorrect.

¶22    When interpreting statutes, our role is "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. In doing so, we must pursue the intent of the Legislature and that intent is determined by interpreting the plain meaning of the language used. In re R.L.S., 1999 MT 34, ¶ 8, 293 Mont. 288, ¶ 8, 977 P.2d 967, ¶ 8. Furthermore, where the language used is clear and unambiguous, the statute speaks for itself and we will not employ other means of interpretation. In re R.L.S., ¶ 8.

¶23    As stated above, § 70-16-302, MCA, provides that

9

[a] person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

The statute contains no express language requiring that the property at issue be "available for public use" before a landowner will be protected from liability. Indeed, § 70-16-302, MCA, expressly provides that a landowner owes a person using property for recreational purposes no duty of care regarding the condition of the property even where the injured person uses the property without permission. Thus, the statute contemplates, by its plain language, circumstances where the property is not open for general public use. We conclude, therefore, that § 70-16-302, MCA, clearly and unambiguously does not require that property be "available for public use" in order for the landowner to be shielded from liability.

¶24    In Simchuk, 253 Mont. at 226, 833 P.2d at 161, rather than beginning with an examination of the plain language of the statute, we looked to legislative history, case law from other jurisdictions and language from another statute to interpret § 70-16-302, MCA. In doing so, we ignored our basic rules of statutory interpretation and inserted language into the statute which is not there. See § 1-2-101, MCA; In re R.L.S., ¶ 8. Indeed, the "available for public use" requirement set forth in Simchuk essentially negates the "without permission" language of the statute and exceeds the statute's parameters. Consequently, we overrule Simchuk to the extent it requires that the property in question be "available for public use" before a landowner is shielded from liability pursuant to § 70-16-302, MCA.

10

¶25 Finally, the Saaris argue that, even if the District Court correctly determined that § 70-16-302, MCA, applied to shield WSI from liability, the court still erred in granting summary judgment to WSI because WSI owed Jean a separate duty of reasonable care as to its conduct and policies which required it to prohibit or monitor after-hours sledding activities on its property. According to the Saaris, genuine issues of material fact exist regarding whether WSI breached this separate duty which is not within the purview of § 70-16-302, MCA.

¶26 A review of the record reflects that the Saaris did not argue this separate duty relating to WSI's "conduct and policies" in the District Court. The entirety of the Saaris' arguments in the summary judgment proceedings was based on WSI's general duty of care regarding the management of its property, as set forth in § 27-1-701, MCA. This is the very duty from which certain landowners are exempt from liability, under certain circumstances, under § 70-16-302, MCA. We will not address an issue raised for the first time on appeal because it is unfair to fault a district court for failing to rule correctly on an issue it had no opportunity to address. Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citations omitted). Consequently, we decline to address the Saaris' argument in this regard.

¶27 We hold that the District Court did not err in granting summary judgment to WSI on all counts of the Saaris' complaint based on its determination that § 70-16-302, MCA, provides WSI with immunity from suit.

¶28 2. Did the District Court err in granting summary judgment to WSI on the Saaris' attractive nuisance claim?

11

¶29 In addition to concluding that WSI was entitled to summary judgment on all counts of the Saaris' complaint based on § 70-16-302, MCA, the court also separately determined that WSI was entitled to summary judgment on the Saaris' attractive nuisance claim. In doing so, the court concluded there were no genuine issues of material fact related to the attractive nuisance claim and, based on the undisputed facts, the claim failed as a matter of law. The Saaris assert that genuine issues of material fact exist which preclude summary judgment on their attractive nuisance claim.

¶30 We concluded above that WSI is entitled to summary judgment on all counts of the Saaris' complaint--including the attractive nuisance claim--based on the immunity from liability provided by § 70-16-302, MCA. Consequently, there is no need to determine whether WSI is entitled to summary judgment on the attractive nuisance claim on any other basis and we decline to address this issue further.

¶31 Affirmed.

/S/ KARLA M. GRAY

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JIM RICE