No. 03-823

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 168

BRYCE WEINERT,

         Plaintiff and Appellant,

   v.

CITY OF GREAT FALLS,

         Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and For the County of Cascade, Cause No. CDV-02-440
                   Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joseph M. Sullivan; Deschenes & Sullivan, Great Falls, Montana

        For Respondent:

            Robert F. James, Cathy J. Lewis; Ugrin, Alexander, Zadick
            & Higgins, Great Falls, Montana

Submitted on Briefs:  April 20, 2004

Decided:  June 29, 2004

Filed:

_____
                  Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     The Eighth Judicial District Court, Cascade County, granted summary judgment to the City of Great Falls (City), in Bryce Weinert's action for negligence and willful or wanton misconduct.  She appeals.  We affirm.

¶2     We restate the issues as follows:

¶3     1.  Does Weinert's failure to comply with Rule 38, M.R.App.P., bar her claim that § 70-16-302, MCA, was enacted in an unconstitutional manner?

¶4     2.  Did the District Court err in concluding the City is immune from Weinert's negligence claim under § 70-16-302, MCA?

¶5     3.  Did the District Court err in granting the City's motion for summary judgment on Weinert's claim that the City engaged in willful or wanton misconduct?

BACKGROUND

¶6     On November 9, 1997, Weinert, age 15, went sledding at the Broadwater Overlook Park in Great Falls, Montana.  She was injured when her sled ran into a safety net the City had installed at the bottom of the sledding hill to cushion sledders who fail to stop on their own.

¶7     Weinert sued the City, alleging that it negligently operated and maintained the sledding hill in an unsafe condition and failed adequately to warn users of the hill's known dangers.  She further claimed the City's actions and omissions constituted willful or wanton misconduct.

2

¶8     The City moved the District Court for summary judgment, arguing it was immune from Weinert's negligence claim pursuant to § 70-16-302, MCA. Section 70-16-302, MCA--part of the Recreational Use Act (Act) adopted by the 1995 Montana Legislature--provides, in relevant part:

> (1)  A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct. . . .
>
> (2) As used in this part, "landowner" means a person or entity of any nature, whether private, governmental, or quasi-governmental[.]

The City also argued that Weinert could not show facts sufficient to raise a jury issue as to whether its conduct was willful or wanton. In this regard, the City submitted documentary evidence addressing the decision-making process in which it had engaged before installing warning signs at the sledding hill and the safety net at the bottom of the hill.

¶9     Weinert responded with a cross-motion for partial summary judgment, arguing that under *Dobrocke v. City of Columbia Falls*, 2000 MT 179, 300 Mont. 348, 8 P.3d 71, *overruled on other grounds*, *Roberts v. Nickey*, 2002 MT 37, 308 Mont. 335, 43 P.3d 263, the Act does not entitle cities to immunity for negligence on city park land. She also argued the Act is unconstitutional because the title of its enacting legislation did not meet the requirements of Article II, Section 18 of the Montana Constitution for laws which create governmental immunity.

3

¶10 After hearing oral argument on the motions for summary judgment, the District Court entered judgment for the City. The court distinguished this case from *Dobrocke* and rejected Weinert's challenge to the constitutionality of § 70-16-302, MCA. The court also held the constitutional challenge was time-barred under the two-year time limit of Article V, Section 11(6) of the Montana Constitution. With regard to the claim for willful or wanton misconduct, the District Court ruled Weinert had not raised a genuine issue of material fact to refute the City's showing that it took care to make the sledding hill safe. Weinert appeals.

ISSUE 1

¶11 Does Weinert's failure to comply with Rule 38, M.R.App.P., bar her claim that § 70-16-302, MCA, was enacted in an unconstitutional manner?

¶12 The title of the bill in which the language ultimately codified in § 70-16-302, MCA, was adopted states: "AN ACT REVISING THE LAWS RELATING TO A PROPERTY OWNER'S LIABILITY TOWARD PERSONS WHO MAKE RECREATIONAL USE OF THE PROPERTY; AND AMENDING SECTIONS 70-16-301 AND 70-16-302, MCA." *See* 1995 Mont. Laws 914. Weinert contends that if § 70-16-302, MCA, was intended to provide immunity for governmental units, the title of the bill was required to specifically indicate that it provides immunity for governmental units. She claims that, because it does not do so, the title misled legislators and the public as to the subject embraced in the bill, in violation of Article V, Section 11(3) of the Montana Constitution.

¶13 We do not reach the substance of Weinert's argument. Rule 38, M.R.App.P., requires a party challenging the constitutionality of an act of the Montana Legislature in an action

4

before this Court in which neither the state nor an agency or officer of the state is a party to give written notice to the Court and the Montana Attorney General of the existence of the constitutional issue. Weinert failed to give notice pursuant to Rule 38. Although she filed a notice with the Attorney General at the District Court level, as required by Rule 24(d), M.R.Civ.P., she failed to file a notice with this Court or with the Attorney General either contemporaneously with her notice of appeal or since that time.

¶14    Weinert asserts that a municipality is a "state agency," relying on *State v. City of Great Falls* (1940), 110 Mont. 318, 100 P.2d 915, and, consequently, Rule 38 notice is not required. The reasoning behind our determination that a city is a "state agency" was that cities were, at that time, creatures of statute. *See Great Falls*, 110 Mont. at 328, 100 P.2d at 920.

¶15    *Great Falls* preceded the enactment of the 1972 Montana Constitution, which allows local government units under self-government charters to exercise any powers not prohibited by the constitution, law or charter. *See* Art. XI, Sec. 6, Mont. Const. The City of Great Falls adopted a self-government charter effective July 1, 1986. *See* Art. I and Art. VIII, Sec. 2, Charter of the City of Great Falls. Thus, as Weinert implicitly recognized by filing her Rule 24(d), M.R.Civ.P., notice in the District Court, the City of Great Falls is not an agency of the State of Montana.

¶16    Weinert also relies on *City of Helena v. Helena Light & Ry. Co.* (1922), 63 Mont. 108, 116, 207 P. 337, 339, for the proposition that "[a] city is but a political subdivision of the state for governmental purposes[.]" Like *Great Falls*, *City of Helena* predated the 1972

5

Constitution. Moreover, Rule 38, M.R.App.P., addresses only state agencies and employees; it does not include "political subdivisions" or "local governments." Neither the state nor an agency thereof is a party to this action between Weinert and the City in which she challenges the constitutionality of an act of the Montana Legislature. Thus, Rule 38 is applicable here and Weinert did not meet its requirements.

¶17 Absent the appellant's compliance with Rule 38, M.R.App.P., we will not address a constitutional challenge to a statute in a case in which the state is not a party. *See Matter of Adoption of C.J.H.* (1990), 246 Mont. 52, 56, 803 P.2d 214, 216. Accordingly, we will not entertain Weinert's constitutional challenge to § 70-16-302, MCA.

## ISSUE 2

¶18 Did the District Court err in concluding the City is immune from Weinert's negligence claim under § 70-16-302, MCA?

¶19 We review a summary judgment *de novo*, applying the same criteria applied by the trial court. *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, ¶ 13, 47 P.3d 432, ¶ 13 (citations omitted). Summary judgment is proper when the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), M.R.Civ.P.

¶20 Weinert contends that, even if her constitutional challenge to § 70-16-302, MCA, is unsuccessful, the statute was not intended to grant immunity to a city and does not apply here. She relies on *Dobrocke* and its discussion of the Act's purpose of encouraging landowners to make land freely available to the public. As she points out, we said in

6

*Dobrocke*, ¶ 77, that because city streets and boulevards are public lands already freely available to the public, it is not necessary to encourage cities to make those lands available to the public by limiting tort liability. Weinert asserts the same is true of a city park; that is, the park is already freely available to the public and it is unnecessary for the law to encourage availability by limiting a city's tort liability.

¶21 In *Dobrocke*, the plaintiff brought an action against the City of Columbia Falls for injuries she received when she tripped over a piece of barbed wire while walking her dog on a grassy area next to a city street. We ruled that walking to and from one's home in a residential area of a city is not the type of "recreational purpose" contemplated by § 70-16-302(1), MCA. *Dobrocke*, ¶ 75. We also termed well-taken the argument that city streets and boulevards in a residential neighborhood are not the type of property for recreational purposes defined in §§ 70-16-301 and -302, MCA. *Dobrocke*, ¶ 76.

¶22 As defined at § 70-16-301, MCA, "recreational purposes" includes "hunting, fishing, swimming, boating, waterskiing, camping, picnicking, pleasure driving, biking, *winter sports*, hiking, touring or viewing cultural and historical sites and monuments, spelunking, or other pleasure expeditions." (Emphasis added.) Unlike the property on which the plaintiff was injured in *Dobrocke*, a sledding hill is clearly within the recreational purposes defined at § 70-16-301, MCA. Moreover, unlike city streets and boulevards, city parks are discretionary rather than necessary, so the legislative rationale behind the Act--encouraging the availability of recreational areas--applies.

7

¶23 We hold the District Court did not err in concluding the City is immune from Weinert's negligence claim under § 70-16-302, MCA.

ISSUE 3

¶24 Did the District Court err in granting the City's motion for summary judgment on Weinert's claim that the City engaged in willful or wanton misconduct?

¶25 As in Issue 2, we review this portion of the District Court's summary judgment decision *de novo*. *Casiano*, ¶ 13. The party moving for summary judgment bears the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. The burden then shifts to the nonmoving party to present material and substantial evidence establishing the existence of material issues of fact which preclude summary judgment. *Saari v. Winter Sports, Inc.*, 2003 MT 31, ¶ 7, 314 Mont. 212, ¶ 7, 64 P.3d 1038, ¶ 7. In addition, when affidavits and other supporting documents have been offered in support of a motion for summary judgment, we draw all reasonable inferences from the offered proof in favor of the party opposing summary judgment. *Spinler v. Allen*, 1999 MT 160, ¶ 16, 295 Mont. 139, ¶ 16, 983 P.2d 348, ¶ 16 (citation omitted).

¶26 Here, the District Court determined that the City met its burden by submitting facts to show it took care with the sledding hill to make it safe. The court also determined that Weinert did not raise a genuine issue of material fact to the contrary. Weinert asserts error.

¶27 Weinert points out the City conceded it had known for years that children had been injured while sledding at Broadwater Overlook Park. Also, Weinert contends the City's supporting documents concerning its decision to erect the safety net at the bottom of the

8

sledding hill establish that the City conducted an analysis only as to cost, not safety. Weinert analogizes these facts to those in *Harmon v. Billings Bench Water Users Ass'n* (9th Cir. 1985), 765 F.2d 1464, on the basis that the City never hired anyone to investigate and analyze possible ways of preventing injuries to sledders from impact with the netting.

¶28    In *Harmon*, the mother of a five-year-old boy who drowned in a Billings, Montana, irrigation ditch brought a wrongful death and survivorship action against the association that owned and maintained the ditch. The mother alleged four theories of liability: nuisance, attractive nuisance, negligence and strict liability. The federal district court granted the defendants' motion for summary judgment, but the Ninth Circuit Court of Appeals reversed. The record in *Harmon* showed that at least four other children had drowned in the irrigation ditch, but that the association had never hired anyone to investigate possible ways of preventing drownings or placed the questions of drownings or fencing the ditch on the agenda of any annual meeting of its shareholders. The Ninth Circuit held there were issues of fact on the theories of attractive nuisance and negligence. *Harmon*, 765 F.2d at 1468.

¶29    In the present case, the City filed two affidavits describing its investigation of ways to prevent injuries. Those affidavits were submitted by City Engineer Rodney Payne and City Manager John Lawton.

¶30    Payne's affidavit stated that the acting city engineer had approached him in February of 1996 to assist in determining the best solution to help prevent sledding injuries at Broadwater Overlook Park and that the City explored options of re-contouring the existing site or installing a netting system to stop sledders at the bottom of the hill. Attached to

9

Payne's affidavit were copies of his notes and calculations which described, in detail, the analysis he conducted before developing the particular netting system which was eventually installed.

¶31 Lawton's affidavit stated that the City had recognized past sledding injuries at Broadwater Overlook Park. He described earlier safety measures the City had taken, including posting warning signs and erecting snow fences and hay bale barriers to cushion sledders who failed to stop on their own at the bottom of the hill and to keep them off the railroad tracks. Lawton stated the hay bales proved unworkable because sledders altered them to use as jumps. In addition, in very cold weather, the bales froze and became hard, creating a potential source of injury to sledders. Lawton stated that, as a result, the City investigated and analyzed various options to prevent sledding injuries at the park in the winter of 1995-96. These options included closing the park to sledding. He stated that option was rejected because it would be difficult to enforce and might only encourage children and others to sled in the streets.

¶32 Lawton also described the re-contouring option, which he stated was rejected because the inordinately large berm which would be required to stop sleds at the bottom of the hill could increase the potential for injury, especially if sledders attempted to use the berm as a jump platform. He said re-contouring would be cost-prohibitive, as well. He stated that, in the end, he had recommended the netting safety system in combination with improved warning signs. Lawton said City staff had tested the netting by running into it before opening the hill to sledders and that, as a further safety measure, they shoveled away a swath

10

of snow at the bottom of the hill to assist in slowing the sledders. We conclude, as did the District Court, that the City met its burden of establishing the absence of any genuine issues of material fact regarding its willful or wanton misconduct.

¶33 The burden now shifts to Weinert to come forward with material and substantial evidence establishing a genuine issue of material fact as to willful or wanton misconduct by the City. *See Saari*, ¶ 7. Weinert advances neither specific facts nor inferences which could be drawn from matters of record which create a genuine issue of fact as to willful or wanton misconduct by the City. Conclusory statements, such as her characterization that the City's analysis dealt only with costs, are not sufficient to create a genuine and material factual issue. *See Saari*, ¶ 7.

¶34 We recently addressed a similar situation in *Saari*. There, members of a church youth group went inner tube sledding at a ski resort, after hours. One sledder crashed into a creek bed and sustained fatal injuries. The plaintiffs contended the ski resort's failure to prevent the group from sledding after hours and failure to supervise the sledding constituted willful or wanton misconduct in light of its knowledge of the dangers involved. The ski resort moved for, and the district court granted, summary judgment on the willful or wanton misconduct issue, and plaintiffs appealed. We determined that the plaintiffs failed to support their conclusory and speculative statements vis-à-vis such misconduct by the ski resort with any substantial evidence. As a result, we concluded they failed to establish the existence of genuine issues of material fact regarding willful or wanton misconduct. *Saari*, ¶ 18.

11

¶35    Here, like the plaintiffs in *Saari*, Weinert does not support her conclusory and speculative claim of willful or wanton misconduct with any substantial evidence. We conclude Weinert has not raised a genuine issue of material fact precluding summary judgment on her claim that the City engaged in willful or wanton misconduct.  On that basis, we hold that the District Court did not err in granting the City's motion for summary judgment on Weinert's claim of willful or wanton misconduct.

¶36    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE

12